Matthias, J.
 

 The rights and responsibilities of the parties grew out of the written proposal of the Trumbull Lumber Company, accepted by the manager of the Warren Cartage & Coal Company, which constitutes the contract, so far as a contract was executed, for the sale of certain timber therein described by the lumber company to the cartage and coal company. Following the invoice therein it was stated as follows:
 

 "Price quoted is for material f. o. b. cars your siding.. It is mutually understood and agreed that you are to make a payment of $1470.00 to us upon the arrival of these timbers. * * * It is further agreed that you are to have six months time
 
 *211
 
 to pay balance of tbe account — this balance to be covered by promissory notes made so that one will fall due every month, the first note being drawn for one month and to be dated the day of completion of delivery of this material. These notes, to be secured by a chattel mortgage.”
 

 The record discloses that pursuant to such agreement the timbers designated were caused by the lumber company to be shipped to the cartage and coal company, which shortly after their arrival, without the consent or direction of the lumber company, were unloaded by the cartage and coal company for the evident purpose of avoiding the accrual of demurrage charges. These timbers were not purchased for the purpose of resale, but for special use of the cartage and coal company in the construction of a coal tipple upon premises of the railroad adjoining its plant, under lease by the cartage and coal company and to be used in connection therewith.
 

 Although frequent demands were made for pay ment of the amount stipulated to be paid in cash and for compliance with the other conditions embraced in the agreement above referred to, nothing further was done by the cartage and coal company, and, shortly thereafter, because of its financial embarrassment, a receiver was appointed. The question presented by the record is whether title to such property passed to the cartage and coal company or whether the delivery of the property to the company, if any was made, was a conditional and not an absolute delivery.
 

 It is to be observed that in the memorandum of agreement it is contemplated that the stated
 
 *212
 
 amount in cash was to be paid, not upon the delivery of the timbers, but “upon arrival of these timbers.” The purpose of the seller to withhold delivery until payment of the amount stipulated is clear and manifest and the fact that, concurrently with delivery, notes secured by chattel mortgage were to be executed to cover deferred payment is equally clear. It is thus seen that at least the cash payment was made a condition precedent to delivery, and that the execution of the notes and chattel mortgage was to be simultaneous with the completion of delivery. Such was the finding of the Court of Appeals, and it was amply supported by the record.
 

 The former decisions of this court support the contention that there was not an absolute, but only a conditional, delivery of this property. In the case of
 
 Wabash Elevator Co.
 
 v.
 
 First National Bank of Toledo,
 
 23 Ohio St. 311, it was held that—
 

 “Where one agrees to sell and another to buy articles at a specified price, and there is no other stipulation as to payment, it is presumed to be a cash sale, and the delivery of the goods and payment of the price are to be simultaneous and concurrent acts. The delivery of the goods on such sale, with the expectation of receiving immediate payment, is not an absolute delivery, and no title vests in the purchaser till the price is paid.”
 

 In the instant case it is urged, and the contention is warranted by the record, that by reason of the fact that they were heavy, and a rehandling would considerably increase the cost, these timbers were to be shipped direct to the siding of the cartage
 
 *213
 
 and coal company, and that upon “arrival” there payment and satisfaction as designated in the agreement were to he made. Hence it is not necessary to indulge in any presumption as to the conditions of sale. They were expressed. Not only immediate payment, hut precedent payment, was . the condition. Consequently there was no absolute delivery. To the same effect as the case above cited is that of
 
 Hodgson
 
 v.
 
 Barrett,
 
 33 Ohio St. 63, 31 Am. Rep. 527. Particularly applicable to the situation disclosed by the record in the case at bar is the holding of this court in the case of
 
 Baltimore & Ohio Southwestern Ry. Co.
 
 v.
 
 Good,
 
 82 Ohio St. 278, 92 N. E. 435, 29 L. R. A. (N. S.) 713, as follows:
 

 “In sales of specific chattels for cash on delivery, delivery and payment are concurrent acts, and delivery in the expectation of receiving immediate payment is'not absolute but conditional, and, when there is no waiver of payment, the property does not pass until the price is paid.”
 

 In the case at bar no waiver of payment was found from the evidence by the Court of Appeals. Indeed, it appears, on the contrary, that there was no such waiver. Nothing whatever was done with or about these timbers by the cartage and coal company other than to remove them from the cars to avoid demurrage charges. It exercised no further control over them and made no use of them whatever, and at one time the manager of that company, presumably in view of the failure of the company, indicated the desire to fully perform its contract and that the timbers in question should be otherwise disposed of by the lumber company.
 

 
 *214
 
 The legal principles set forth and applied in the cases above cited are not inconsistent with the provisions of the sales act; hence have not been abrogated by it and are therefore applicable to this case. Section 8398, General Code, provides as follows:
 

 “(1) When there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case.”
 

 The very condition for the application of rule 4 of section 8399, General Code, invoked by counsel for plaintiff in error, did not exist, to wit:
 

 “Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.”
 

 The facts disclosed by the evidence, heretofore pointed out, warrant the conclusion that the intention of the parties was that there should be no complete delivery of the timbers until the conditions upon which delivery was to be completed had been complied with; hence the finding of the Court of Appeals, as the basis of its judgment, that there was no delivery of the goods and no unconditional appropriation thereof.
 

 This was in no sense a conditional sale, and therefore the provisions of section 8568, General Code, have no application to this transaction, in which there was no agreement for payment in in
 
 *215
 
 stallments, but an agreement that “upon arrival” a portion of the consideration was to be paid in cash, and, contemporaneous with the delivery, notes for the balance and a mortgage securing same were to be executed. The rights of the receiver rise no higher than those of the insolvent, defaulting purchaser.
 
 Pridmore
 
 v.
 
 Puffer Mfg. Co.,
 
 163 Fed. 496, 90 C. C. A. 42.
 

 It follows that the judgment of the Court of Appeals reversing the judgment of the court of common pleas should be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Robinson, Jones, Day and Allen, JJ., concur.
 

 Wanamaker, J., not participating.