VAL DECKER PACKING COMPANY, PLAINTIFF, *v.* ARMOUR AND
COMPANY, DEFENDANT.

Common Pleas Court, Franklin County.

No. 202758.   Decided July 11, 1960.

*Messrs. Porter, Stanley, Treffinger & Platt*, for plaintiff.
*Messrs. Dargusch, Saxbe & Dargusch*, for defendant.

GESSAMAN, J.   Plaintiff seeks to recover from the defendant
the sum of $1690.49.   A jury was waived and the case has been
submitted to the Court upon the evidence and the briefs of
counsel.

The facts are not in dispute. At about 5:00 P. M., December 26, 1956, a Mr. Irwin Busse, representing the defendant, called the plaintiff's office and talked with Mr. Louis B. Decker, Chairman of the Board of Directors of plaintiff. At the price of $8885.51, fixed by Mr. Decker, Mr. Busse ordered from plaintiff for defendant a truck load of dressed hogs to be shipped to Western Pork Packers, Inc. "C. A. F.," Worcester, Mass. Plaintiff engaged the Wilson Freight Forwarding Co., Cincinnati, Ohio, to transport the hogs in a refrigerated truck. The loaded truck left plaintiff's place of business in Piqua, Ohio, at 12:25 P. M., December 27, 1956. On December 28, 1956, before 3:00 P. M., the driver of the truck called Mr. Ralph Cutillo, Armour and Company manager in Worcester, Mass., and stated that his truck had developed mechanical trouble and that he could not make delivery by 3:00 P. M. that day. Mr. Cutillo authorized the driver to deliver by 6:00 A. M., December 29, 1956. The truck did not arrive by that time and did not arrive until December 31, 1956, at which time defendant refused to accept the shipment. It was sold to another company for $7203.99. The condition and quality of the merchandise is not in dispute.

After the telephone conversation between Mr. Busse and Mr. Decker, plaintiff received from defendant a "Confirmation of Purchase." In addition to the provisions to which we have already referred, there are contained in this document the shipping date, "11 P. M. 12/26/56." "Payment: S. D. B. L. (sight draft bill of lading) against documents," and the following: "Note: Please show on bill of lading in large size, bright colored print or crayon that Western Pork Packers, Inc. desire to unload these hogs not later than 3:00 P. M. Friday, 12/28 and as much sooner as possible. If delayed, truck driver to please call collect, Mr. Ralph Cutillo, Mgr. Armour & Co. 219 Summit St. Worcester, Mass, tele. No. Pleasant 2-5653." This was done.

Counsel for the plaintiff contend that since the hogs were to be shipped "C. A. F." Worcester, their duty under the contract was fulfilled when the merchandise was delivered to the carrier at their place of business in Piqua, and that the risk thereafter was on the buyer, the defendant. Counsel for the defendant contend as follows:

"The defendant takes no issue with the general legal incidents of a 'C & F' or 'C. I. F.' contract, as set forth in plaintiff's brief. It is agreed that title to the goods with the attendant risk of loss passes from the seller to the buyer upon delivery to the carrier, but only if the terms of the contract to sell are fulfilled by the seller."

In considering the questions herein, we must first examine Section 1315.19, Revised Code, which reads as follows:

"When there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case."

Consideration must also be given to Section 1315.20, Revised Code, the pertinent parts of which provide:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:
"* * *

"(E) If a contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

In construing these two sections, the Supreme Court held as follows in syllabus 2 of *Rehr* v. *The Trumbull Lumber Co.*, 110 Ohio St., 208:

"2. Under the provisions of Section 8398, General Code, when there is a contract to sell specific or ascertained goods the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred, and by the clear terms of that section and Section 8399, General Code, the rule set forth in the latter section for ascertaining the intention of the parties has no application where 'a different intention appears' from 'the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case.' "

Section 8398, General Code, is now Section 1315.19, Revised

Code, and Section 8399, General Code, is now Section 1315.20, Revised Code.

The Supreme Court has made it clear that title to the property passes under the rule of Section 1315.20, Revised Code, unless "a different intention appears" from "the terms of the contract, the conduct of the parties, usages of the trade and the circumstances of the case."

In attempting to consider whether "a different intention appears" other than that specified in Section 1315.20, Revised Code, consideration must be given to Section 1315.47, Revised Code. The pertinent part is as follows:

"When, in pursuance of a contract to sell or a sale, the seller is authorized or required to send the goods to the buyer, delivery of the goods to a carrier, whether named by the buyer or not, for the purpose of transmission to the buyer is deemed to be a delivery of the goods to the buyer, except as provided for in division (E) of Section 1315.20, Revised Code, unless a contrary intent appears. * * *"

One of the terms of the contract, which also involves a usage of the trade, is the provision that the hogs were to be shipped "C. A. F. Worcester." To understand that term fully, we call attention to *Madeirense Do Brasil S/A* v. *Stulman-Emrick Lumber Co.*, 147 Fed. (2), 399, and specifically to the language of the Court at page 402 of the opinion:

"Plaintiff argues further that it has duly performed because a c. & f. contract requires it only to deliver, or to tender delivery of, the lumber to a carrier in Brazil. The term 'c. & f.' means that the price includes in a lump sum 'cost' and 'freight' to the named destination. *Segall* v. *Finlay*, 245 N. Y., 61, 156 N. E., 97, affirming 126 Misc., 625, 213 N. Y. S., 540; Id., 218 App. Div., 723, 218 N. Y. S., 895; The Hans Maersk, 2 Cir., 266 F., 806, 810, 811; Uniform Revised Sales Act, Proposed Final Draft No. 1, 1944, Sec. 45, with comments by Professor Llewellyn, the Reporter, and his Advisers, pp., 177-179, citing and discussing the authorities. The term 'c. & f.' thus either requires the seller to prepay the freight or permits the buyer after having paid the actual charges to deduct them from the price, in either case putting the seller under an ultimate obligation to pay for the transportation. Ordinarily where the seller

pays the freight, there is an inference under Rule 5 of Sec. 19 of the Uniform Sales Act, N. Y. Personal Property Law, Consol. Laws, c. 41, Sec. 100, rule 5, that the parties intend no passage of title until the goods reach the destination to which freight is paid. But commercial usage, recognized by the courts and text writers, is that under a c. & f. contract the seller fulfills his duty on shipment of the goods, and that the risk thereafter is on the buyer unless other terms of the contract indicate a contrary intention. * * *''

Does the contract indicate such a contrary intention? We think not.

Counsel for the defendant agree, as we have hereinabove noted, that under a C. A. F. contract "title to the goods with the attendant risk of loss, passes from the seller to the buyer upon delivery to the carrier, but *only* if the terms of the contract to sell are fulfilled by the seller." They contend that while the delay in shipment was not the *fault* of the plaintiff, it "was certainly plaintiff's *default* which is the pertinent issue." Counsel for defendant conclude their brief with this statement:

"The plaintiff materially breached the contract to sell by failing to ship the hogs at the required time. It has been shown that time was of the essence of the agreement. As the plaintiff did not perform an essential term, the contract to sell never ripened into a contract of sale. Delivery to the carrier was ineffectual to pass title to the hogs."

Therein their argument is summarized. Did the plaintiff fail to perform "an essential term" of the contract? To state it in another way, was the time of shipment (as contained in the contract) "of the essence of the agreement?" We think not.

"Time is not of the essence of the contract unless made so by its terms." *Hubbard* v. *Norton*, 28 Ohio St., 116 at page 128; *The Elworthy-Helwick Co.* v. *The S. H. Kleinman Realty Co.*, 30 A. L. R. (App.), 407, at page 409. A careful examination of the contract reveals clearly that the consignee *desired* to unload the shipment by "3:00 P. M. Friday, 12/28." Whether that date was or was not of the essence, need not now be determined, but it is obvious that it was the only date in which either the

defendant or Western Pork Packers, Inc. were interested. That fact is emphasized by the provision that the driver should call the defendants' manager at Worcester in case of delay and by the fact that that date was to be shown "on the bill of lading in large size, bright colored print or crayon." There is nothing in the agreement which indicates that anyone cared whether the hogs were shipped by 11:00 P. M. 12/26/56, just so they arrived by "3:00 P. M. Friday, 12/28." The latter was the important date.

The shipment actually left plaintiff's place of business on December 27, 1956, at 12:25 P. M. The evidence discloses that the driving time from Piqua, Ohio, to Worcester, Mass. was twenty-four hours. Had nothing happened to the truck, it is reasonable to assume that the hogs would have been delivered by 12:25 P. M., December 28, 1956, or two and one-half hours prior to the desired time. We refer to this only to point out that neither the defendant nor Western Pork Packers, Inc. were particularly interested in the time at which the hogs left Piqua. They were interested in the time at which they arrived at Worcester. Therefore, we feel that the time of shipment, mentioned in the contract, was not made of the essence "by its terms" nor was there anything in the conduct or acts of the parties that made it of the essence of the contract, nor was it an essential term thereof.

There is another element of the contract which leads us to the conclusion that the parties intended title to pass when the hogs were delivered to the carrier and that is that the term "C. A. F. Worcester," appears twice in the agreement. Mr. Louis Decker and Mr. Carl Decker, Vice President of plaintiff, testified as to their understanding of the term "C. A. F.,"—or "C & F" as it is often written. Their understanding conformed to the definition contained in *Brasil S/A* v. *Stulman-Emrick Lumber Co., supra*. The defendant offered no evidence, other than to subscribe to a stipulation of facts and there is, therefore, no evidence of any different understanding on its part. Furthermore, counsel by their briefs, are in agreement.

Mr. Louis Decker testified that Mr. Busse called and their telephone agreement was made on December 26, 1956, at 5:00 o'clock P. M. With the so-called "shipping date" only six hours later, we can hardly find either that the contract made the

shipping date of the essence of the contract or that the parties did so by conduct or acts or that it was an "essential term" of the contract.

Our conclusions are: 1. that the agreement entered into between plaintiff and defendant was a C. A. F. or C. & F. contract; 2. that the shipping date was neither an essential term of nor was it of the essence of the contract; 3. that, therefore, plaintiff did not breach the contract by shipping the hogs on December 27, 1956; 4. that when plaintiff delivered the hogs to the carrier, title passed to the defendant and the risk thereafter was on the defendant; 5. that defendant's refusal to accept the hogs when they were delivered in Worcester, Mass. did not relieve it of its duty to pay plaintiff for them and, 6. that therefore the plaintiff should recover from the defendant the difference between the contract price of the hogs and the price at which it sold them, plus $8.97 expense incurred by plaintiff by reason of defendant's refusal to accept the hogs. Our finding is that the plaintiff recover from the defendant the sum of $1690.49. Entry may be drawn accordingly and exceptions noted.